THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| DUANE L. CHRISTENSEN, | ) | 8:04CV633 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **MEMORANDUM** |
| | ) | **AND ORDER** |
| THE QWEST PENSION PLAN | ) | |
| and THE EMPLOYEE BENEFITS | ) | |
| COMMITTEE OF THE QWEST | ) | |
| PENSION PLAN, | ) | |
| | ) | |
| Defendants. | ) | |

This is an action under the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001, et seq. ("ERISA"), in which plaintiff Duane Christensen claims the Employee Benefits Committee of the Qwest Pension Plan ("Plan") violated its fiduciary duty and its duty under 29 U.S.C. §§ 1025 and 1132 to provide accurate benefit statements to Christensen.

Christensen alleges that he contacted the Plan five times requesting retirement benefit calculations that assumed different retirement dates. Based on the information he received, Christensen says he elected to retire. However, the first monthly pension payment Christensen received was approximately $260 per month less than the amount set out in the requested calculations. Christensen does not dispute that he has received the full value of all benefits he actually is eligible to receive under the terms of the Plan; rather, he claims he should receive the extra $260 per month that was reflected in the benefit calculations he requested from the Plan. Defendants have moved for summary judgment (filing 21). For the reasons discussed below, I shall grant the defendants' motion.

1

## I. FACTS

The undisputed[1] material facts are these:

1.  Qwest provides pension benefits to its employees through the Plan. There are approximately 105,000 participants in the Plan. (Filing 23, Decl. Margarita Dobis ¶ 2.)

2.  Qwest distributes to all plan participants a Summary Plan Description ("SPD") that provides information about the Plan and the calculation of Plan benefits. In May 2003, Qwest distributed a copy of the SPD by mail to all occupational employees participating in the Plan, including plaintiff Duane Christensen. (Filing 23, Decl. Margarita Dobis ¶ 3.) A copy of the SPD also is available on a website for plan participants, www.qwestpension.com. Id. The SPD identifies the Employee Benefits Committee as the Plan Administrator and provides the address for the Committee. (Id. Ex. A, at 17.)

3.  The amount of benefits a participant is eligible to receive under the Plan is based upon a number of factors, including an employee's length of service and the

---

[1]Plaintiff has responded to most paragraphs of Defendants' Statement of Material Facts only by stating that Defendants' factual "allegations" are "not facts established by the administrative record in this case" and that Plaintiff "has no information, nor has he had reasonable opportunity to discover same, regarding those factual allegations." (Filing 27, Br. Pl. Opp'n Defs.' Mot. Summ. J.) Because this type of response does not properly "controvert" Defendants' statement of facts pursuant to NECivR 56.1(b) and because Plaintiff has not filed an affidavit stating that he cannot present facts essential to justify his opposition to Defendants' motion for summary judgment without further discovery, Fed. R. Civ. P. 56(f), I shall consider Defendants' Statement of Material Facts (filing 22, at 7-13) as the undisputed material facts for purposes of the motion under consideration.

jobs he or she has held at Qwest.  (Id. ¶¶ 18-19 & Ex. B, at 5-9.)  For a Qwest "occupational" employee such as Christensen, the SPD explains that "your pension benefit is based on the pension band assigned to your job title[2] and your Pension Calculation Service ("PCS").  Your basic monthly pension is calculated by using the monthly pension factor for your pension band . . . multiplied by your PCS."  (Id. ¶ 18 & Ex. A, at 11.)

4.  Qwest contracts with a vendor, Watson Wyatt, to perform various ministerial, day-to-day functions for the Plan, including processing retirement requests, calculating benefit estimates for Plan participants, and answering participant questions.  (Id. ¶ 4.)

5.  Watson Wyatt maintains an Interactive Voice Response ("IVR") system, which is an automated telephone system that can be accessed by Plan participants.  (Id. ¶ 5.)  Watson Wyatt also maintains an Internet website, www.qwestpension.com.  (Id. ¶¶ 6-7.)  Using the IVR system and/or the website, Plan participants can enter a personal identification number and generate an unlimited number of automated estimates of their projected retirement benefits.  (Id.)  In 2004, over 115,000 estimates were generated through the IVR system and website.  (Id. ¶ 7.)  The SPD describes the availability of such estimates as follows:

**How do I obtain a pension benefit estimate?**

---

[2]Pension bands are assigned in the applicable collective bargaining agreement.  (Id. Ex. B, at 5-9.)  Christensen was aware of the role of pension bands in determining benefits under the Plan.  For example, during the appeal of Christensen's administrative claim for additional Plan benefits, Christensen stated that he believed he was in pension band 117 from 1979 to 1982, and he submitted excerpts regarding pension bands from three separate Communications Workers of America collective bargaining agreements.  (Id. Ex. C, at 12-23.)

> To obtain a pension benefit estimate or to request a retirement package for purposes of electing distribution when employment ends, including a pension estimate, you may access the information at www.qwestpension.com or call the Service Center at 1-800-729-7626. You will be required to enter your Social Security Number and your Personal Identification Number (PIN) to obtain this information. If employment ends, you will automatically receive a retirement package. *These estimates are not binding; if a mistake is made, you will be paid the corrected amount, even if less than the estimated amount.*

(Id. Ex. A, at 15-16 (emphasis added).)

    6.    As each estimate is generated by the automated system, the participant can elect to have a copy of the estimate sent by mail. (Id. ¶ 5.) Estimates are mailed to the requesting employee along with a standard letter stating as follows:

> As you requested, we have estimated your Qwest Pension Plan benefit assuming you terminate employment on [date inserted by participant]. Please refer to the enclosed Calculation Summary for information regarding your estimated pension benefit from the Qwest Pension Plan.
>
> **Please note:** The amounts listed in the Calculation Summary are estimates of your pension benefit based on the most recent available data. Please review your personal data and notify the Qwest Service Center @ Watson Wyatt of any discrepancies in your personal data. The Company reserves the right to make corrections to this information.
> . . .
>
> When you are ready to retire, you must contact the Qwest Service Center @ Watson Wyatt for a Pension Benefit Kit, which will include an updated Calculation Summary.

4

(Id. Ex. C, at 47, 52, 57, 62, 67 (benefit estimate letters sent to Duane Christensen).)

7. As explained in the foregoing letter, the estimates are set forth in a "Calculation Summary." (Id. ¶ 10 & Ex. C at 48, 53, 58, 63, 68.) Across each page of the Calculation Summary is stamped "ESTIMATE" in large block letters. Id. In addition, the first page of each Calculation Summary includes the following admonition in italicized type: *"Data is based on most recent payroll information. All data will be verified at the time your final payment is made."* (Id.)

8. Participants are also asked to review their personal data and notify the Qwest Service Center at Watson Wyatt of any discrepancies in the data. From time to time, participants do contact Watson Wyatt for this reason. When Watson Wyatt and/or Qwest learn of such potential inaccuracies, they are addressed. (Id. ¶ 9.)

9. When an employee is ready to retire and requests a Pension Benefit Kit, the employee receives a Benefit Option Election Form, pre-printed with projected benefit amounts. The Benefit Option Election Form is generated with the same data used for pension estimates. To elect benefits, an employee must sign a "Participant Authorization" stating that "[i]n order to process your election, you must read the following information and sign below." (Id. ¶ 11.) Among other things, the employee must read and acknowledge the following paragraph, which appears just above the signature line on the election form:

> I understand that I am making this election based on estimated benefit amounts. Therefore, my final benefit amount is subject to change, based upon a final review of payroll data and applicable plan provisions.

(Id. ¶ 11 & Ex. C, at 42.)

10. As automated estimates are generated, they typically are not reviewed

by a Watson Wyatt employee. (Id. ¶ 7.) However, when a Plan participant retires, a final audit is performed to determine the amount of benefits to which he or she is entitled under the Plan. The participant's information is reviewed manually and all data and calculations are verified. Doing so assures that the benefits are paid in accordance with the terms of the Plan. (Id. ¶ 12.)

11.     Occasionally, but infrequently, an employee's final benefit amount turns out to be different from the estimates generated on the Benefit Option Election Form. When this happens, a letter is sent to the affected participant to explain the final calculation. In those situations where a final audit affects the benefit calculation, the situation sometimes favors the participant (a benefit larger than estimates) and sometimes it does not (a benefit lower than estimates), but in each case the final calculation determines the employee's correct eligible benefit under the Plan. (Id. ¶ 13.)

12.     Watson Wyatt reports to the Qwest Plan Manager regarding instances where an employee's final benefit calculation deviates more than 10% from the amount generated on the Benefit Option Election Form. There are approximately 500 retirements from the Plan each month. On average, only two or three (less than 1%) of those retiring employees receive final benefit calculations that deviate more than 10% from prior estimates. (Id. ¶ 14.)

13.     Plaintiff Christensen requested automated estimates from the IVR system five times between March 18, 2003, and November 29, 2003. Each time, an estimate was mailed to Christensen using the standard letter containing the various cautions and reservations. (Id. ¶ 15.) The results of the estimates were as follows:

6

| DATE OF ESTIMATE | RETIREMENT DATE USED IN ESTIMATE | PENSION BAND USED IN ESTIMATE | ESTIMATED MONTHLY BENEFIT[3] |
|---|---|---|---|
| March 18, 2003 | July 5, 2003 | 119 | $1,715.16 |
| July 3, 2003 | August 4, 2003 | 119 | $1,719.89 |
| July 8, 2003 | September 8, 2003 | 119 | $1,724.61 |
| September 20, 2003 | May 5, 2004 | 119 | $1,763.28 |
| November 29, 2003 | March 4, 2004 | 119 | $1,758.75 |

14.     Christensen also requested a retirement benefits package and signed a Participant Authorization form. The pre-printed election form listed the monthly benefit amount as being $1,754.01 per month, but Christensen also signed the acknowledgment stating that "my final benefit amount is subject to change, based on final review of payroll data and applicable plan provisions." (Id. ¶ 16.)

15.     On April 29, 2004, the Qwest Service Center at Watson Wyatt sent Christensen a letter stating as follows:

> In completing the final calculation of your benefit from the Qwest Pension Plan, it was found that your benefit was not calculated using the correct pension band. The estimate was based only on band 119 instead of a combination of band 109 and band 119. Correcting for this issue reduces your monthly benefit from $1,754.01 to $1,484.77. This is the amount that you will begin receiving on May 1, 2004.

(Id. Ex. C, at 45.)

---

[3]The benefit amounts discussed are for an immediate life annuity with ten years certain, which is the payment option that Christensen elected on retirement.

16. An additional letter was sent to Christensen on May 7, 2004, stating as follows:

> As we discussed on the telephone, your actual benefit from the Qwest Pension Plan is less than the amount shown in the estimate which you were provided. The estimate overstated your benefit because the data received from the Qwest payroll feed did not correctly report your demotion to Information Specialist. The data incorrectly indicated that you were in a position under Pension Band 119 for more than 18 months. As a result, your benefit estimate was calculated based on all service under Pension Band 119.
>
> When your final benefit calculation was completed and actual payroll records were reviewed manually, it was found that you did not have 18 months of service in Band 119. Therefore, your benefit was corrected to reflect 30 years and 7 months under Band 109 and 4 months under Band 119. The Plan may only pay the amount determined based on the correct data which resulted in your final benefit being less than the estimate.
>
> Because it is not practical to manually review benefit estimates, in some cases the actual benefit is significantly less than the estimate. Because of these situations, the letter which you received with your estimate clearly states that the benefit amounts shown are estimates only and that you should carefully review the information upon which the estimate is based.

(Id. Ex. C, at 46.)

17. On June 24, 2004, counsel for Christensen submitted a claim for benefits under the administrative claims process provided for in the Plan. The claim was denied. (Id. ¶ 21 & Ex. C.)

8

## II.  ANALYSIS

### A.  Standard of Review

Summary judgment should be granted only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). See also Egan v. Wells Fargo Alarm Servs., 23 F.3d 1444, 1446 (8th Cir. 1994). In passing upon a motion for summary judgment, the district court must view the facts in the light most favorable to the party opposing the motion. Dancy v. Hyster Co., 127 F.3d 649, 652-53 (8th Cir. 1997).

In order to withstand a motion for summary judgment, the nonmoving party must substantiate its allegations with "'sufficient probative evidence [that] would permit a finding in [their] favor on more than mere speculation, conjecture, or fantasy.'" Moody v. St. Charles County, 23 F.3d 1410, 1412 (8th Cir. 1994) (quoting Gregory v. City of Rogers, 974 F.2d 1006, 1010 (8th Cir. 1992)). "A mere scintilla of evidence is insufficient to avoid summary judgment." Id. Essentially, the test is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986).

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is "entitled to a judgment as a matter of law" because the nonmoving party

> has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.

Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

## B. Disclosure Claim

Christensen first contends that the Committee, as Plan Administrator, failed to provide him with an accurate statement of accrued benefits pursuant to 29 U.S.C. § 1025(a), entitling him to statutory damages under 29 U.S.C. § 1132(c)(1). Section 1025 provides in relevant part:

> **(a) Statement furnished by administrator to participants and beneficiaries**
>
> Each administrator of an employee pension benefit plan shall furnish to any plan participant or beneficiary who so requests *in writing* a statement indicating, on the basis of the latest available information—
> - **(1)** the total benefits accrued, and
> - **(2)** the nonforfeitable pension benefits, if any, which have accrued, or the earliest date on which benefits will become nonforfeitable.
>
> **(b) One-per-year limit on reports**
>
> In no case shall a participant or beneficiary be entitled under this section to receive more than one report described in subsection (a) of this section during any one 12-month period.

29 U.S.C. § 1025 (emphasis added). The Qwest Pension Plan Summary Plan Description, which was mailed to all Qwest "occupational" employees, including plaintiff Duane Christensen, repeats the substance of this statute in a section entitled "Statement of ERISA Rights":

10

> As a Participant in the Qwest Pension Plan, you are entitled to certain rights and protections under ERISA. ERISA provides that all Plan Participants shall be entitled to:
>
> . . . .
>
> Obtain a statement telling you whether you have a right to receive a pension at normal retirement age (generally age 65) and if so, what your benefits would be at normal retirement age if you stop working under the Plan now. If you do not have a right to a pension, the statement will tell you how many more years you have to work to get a right to a pension. This statement *must be requested in writing* and is not required to be given more than once every twelve (12) months. The Plan must provide the statement free of charge.

(Filing 23, Ex. A, at 20 (emphasis added).)

ERISA allows a civil action to be brought for a Plan Administrator's failure to provide information required to be given under ERISA:

> Any administrator . . . who fails or refuses to comply with a request for any information which such administrator is required by this subchapter to furnish to a participant or beneficiary (unless such failure or refusal results from matters reasonably beyond the control of the administrator) . . . within 30 days after such request may in the court's discretion be personally liable to such participant or beneficiary in the amount of up to $100[4] a day from the date of such failure or refusal, and the court may in its discretion order such other relief as it deems proper.

29 U.S.C. § 1132(c)(1).

---

[4]Without citation, both parties claim that this maximum discretionary penalty has increased to $110 per day by separate legislation and administrative rulemaking. (Filing 22, at 15 n.4; Filing 27, at 7.)

Christensen's claim that the Qwest Plan Administrator failed to give him an accurate statement of accrued benefits, as required by the above-quoted statutes, fails because (1) there is no evidence that Christensen sent a request for accrued benefits "in writing" to the Plan Administrator, as required by 29 U.S.C. § 1025(a); and (2) even if Christensen had made his requests in writing, imposition of the above-described statutory penalty is entirely discretionary and is unwarranted here.

### 1. "In Writing"

Statutory penalty provisions are to be construed strictly and such penalties should not be imposed unless the words of the statute plainly require it. See Ivan Allen Co. v. United States, 422 U.S. 617, 627 (1975) (tax provision aimed at accumulated taxable income strictly construed); Commissioner v. Acker, 361 U.S. 87, 91 (1959) (a "taxing Act" imposing a penalty should be strictly construed; one is not to be subjected to a penalty unless the words of a statute plainly require it); First Nat'l Bank of Gordon v. Department of Treasury, 911 F.2d 57, 65 (8th Cir. 1990) ("Penal provisions, even those involving civil penalties, should be strictly construed."). The penalty provisions in ERISA at issue here, 29 U.S.C. § 1025(a) and 1132(c), are subject to such strict construction. Haberern v. Kaupp Vascular Surgeons Pension Plan, 24 F.3d 1491, 1505-06 (3rd Cir. 1994).

Section 1025(a) plainly requires a Plan Administrator to provide a formal statement of benefits only when a participant sends a request "in writing" to the Plan Administrator. Here, there is no evidence whatsoever of such a written request. Further, and to the extent Christensen claims that electronic requests for benefit statements constitute a "writing" for purposes of 29 U.S.C. § 1025, there also is no evidence of any electronic requests. In fact, the only evidence that Christensen made any inquiry at all of the Plan Administrator are letters to Christensen from the Qwest Service Center at Watson Wyatt that state, "*As you requested*, we have estimated your Qwest Pension Plan benefit" and the declaration of Qwest's Pension Plan Manager

that Christensen requested estimates from Watson Wyatt's Interactive Voice Response automated telephone system five times in 2003. (Filing 23, Ex. C, at 47, 52, 57, 62, 67 (emphasis added).)

It is simply disingenuous for Christensen to claim that his five requests for benefit estimates in a nine-month period from a third party who was hired to perform ministerial functions for the Plan were intended to be requests for statements of accrued benefits under 29 U.S.C. § 1025 when (1) there is no evidence that his requests were made in writing or electronically, and (2) section 1025 and the SPD explicitly allow only one such benefit statement per year.

Since Christensen is "'invoking the punitive sanctions of ERISA for technical violations of the statute, he must establish that he has complied with the statutory prerequisites,'" which he has failed to do. Tracey v. Heublein, Inc., 772 F. Supp. 726, 728 (D. Conn. 1991) (quoting Porcellini v. Strassheim Printing Co., Inc., 578 F. Supp. 605, 611 (E.D. Pa. 1983)).

### 2. Penalty is Discretionary

The Eighth Circuit Court of Appeals has noted that "[t]he purpose of ERISA's statutory penalty is to punish noncompliance. The employer's good faith and the absence of harm are relevant in deciding whether to award a statutory penalty." Chestnut v. Montgomery, 307 F.3d 698, 704 (8th Cir. 2002) (no penalty imposed for "technical violation" of ERISA notice provisions) (internal citations omitted). See also Estate of Geissal v. Moore Med. Corp., 338 F.3d 926, 933-34 (8th Cir. 2003) (no statutory penalty imposed when plan administrator made "good faith attempt" to comply with ERISA notice provisions); Wilson v. Moog Automotive, Inc. Pension Plan, 193 F.3d 1004, 1010 (8th Cir. 1999) (district court properly exercised its discretion in declining to penalize company, even assuming plan administrator did not strictly comply with ERISA disclosure rules, when plaintiffs were not prejudiced and

plan administrator did not act in bad faith).

Even if Christensen's alleged electronic requests for benefit information from Watson Wyatt's Interactive Voice Response system could be construed as a "writing" under 29 U.S.C. § 1025(a), there is no evidence that the Employee Benefits Committee of the Qwest Pension Plan acted in bad faith when it contracted with a vendor, Watson Wyatt, to perform various ministerial, day-to-day functions for the Plan, including processing retirement requests, calculating benefit estimates for Plan participants, and answering participant questions. This is especially so when Christensen was repeatedly warned in writing that the estimates were not binding; that if a mistake was made, Christensen would be paid the corrected amount, even if less than the estimated amount; and that Qwest reserved the right to make corrections to the information provided. The fact that the benefit calculations provided to Christensen by Watson Wyatt were only estimates could not have been more clear by virtue of the word "ESTIMATE" printed diagonally in large block letters across each and every page of the calculation summaries.

Therefore, even if there were evidence in this case that Christensen made his benefit-summary requests in writing, the penalty set forth in 29 U.S.C. § 1132(c)(1) is discretionary and not warranted in the absence of evidence of bad faith on the part of the defendants.

## C.  Fiduciary Duty Claim

Christensen next asserts that the Committee breached its fiduciary duty[5] under 29 U.S.C. § 1104(a)(1)(A) and (B) when it provided Christensen false and misleading benefit information. He claims he is entitled to "the benefit the committee represented to Plaintiff was the amount to which he was entitled under the plan," as

---

[5]Christensen does not make an equitable estoppel argument.

14

well as "equitable relief" authorized by 29 U.S.C. § 1132(a)(3)(B). (Filing 1, Complaint ¶ 19.)

> Section 1104(a) provides in relevant part:
>
> [A] "fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and—(A) for the exclusive purpose of . . . providing benefits to participants and their beneficiaries . . . (B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims.

29 U.S.C. § 1104(a)(1)(A) & (B). One court has described subsection (A) as creating a duty of loyalty, while subsection (B) creates a duty of care. Frahm v. Equitable Life Assurance Soc'y, 137 F.3d 955 (7th Cir. 1998) (any error in communicating ERISA plan's terms did not violate statutory fiduciary duty). The duty of loyalty requires a fiduciary to act in its investors' interests. The duty of care in subsection (B) "addresses overall management of the plan, particularly of its assets, rather than the quality of oral advice to beneficiaries." Id. at 960.

> [W]hatever [§ 1104(a)(1)(B)] does, it does not create a standard of absolute liability. A duty of care is not a duty of prevision. A plan administrator satisfies § 1104(a)(1)(B) by taking appropriate precautions—such as training the benefits staff and providing accurate written explanations—even if the precautions sometimes prove to be insufficient.
>
> Treating § 1104(a) as establishing a duty to give plan participants whatever benefits someone on the staff led them to believe were available would undermine an essential principle established by ERISA: there are no oral variances from written plans.

Id.

Several courts have held that the communication of inaccurate information regarding the amount of benefits to which an employee is entitled is not a breach of fiduciary duty under ERISA. Easa v. Florists' Transworld Delivery Ass'n, 5 F. Supp. 2d 522 (E.D. Mich. 1998) (clerical error in calculating anticipated retirement benefits by actuary for pension plan was not breach of fiduciary duty; breach requires deliberately misleading plaintiff in providing benefit information; characterizing such error as breach of fiduciary duty would afford plaintiff windfall and would violate fundamental policy of ERISA that pension plans must be in writing); Gramm v. Bell Atlantic Mgt., 983 F. Supp. 585 (D.N.J. 1997) (error in calculating pension benefits does not constitute willful misconduct or bad faith sufficient to support breach of fiduciary duty claim under ERISA); Hart v. The Equitable Life Assurance Soc., 2002 WL 31682383 (S.D.N.Y. Nov. 26, 2002) (in case where employer implemented computerized system that allowed employees to request benefit statements by telephone, administrator's miscalculation of employee's benefits was not affirmative misrepresentation that would support breach of fiduciary duty claim under ERISA, especially when each estimate was clearly labeled with cautionary language that final benefit amount may differ from estimate; "defendants anything *but* affirmatively misrepresented the monthly benefits by candidly stating that they were estimates subject to change . . . upon final review"); Fitch v. Chase Manhattan Bank, N.A., 64 F. Supp. 2d 212 (W.D.N.Y. 1999) (providing erroneous benefit estimates due to honest mistake does not constitute breach of fiduciary duty under ERISA when defendants did not actively or knowingly mislead plaintiffs and did not act in bad faith); Hofsas v. Montgomery Hosp. Med. Center, 2000 WL 1479824 (E.D. Pa. Oct. 5, 2000) (mistake in calculating pension benefits is not willful misconduct or bad faith sufficient to support breach of fiduciary duty claim under ERISA; such a breach may occur when plan administrator affirmatively misrepresents terms of plan or fails to provide information, knowing failure to do so might cause harm); Kuehl v. Chrysler Pension Plan, 895 F. Supp. 1147 (E.D. Wis. 1995) (mistake in calculating pension benefits not breach of fiduciary duty under ERISA in absence of willful or bad faith conduct).

An Interpretive Bulletin Relating to the Employee Retirement Income Security Act of 1974 states that Plan fiduciaries, like the defendant Employee Benefits Committee of the Qwest Pension Plan, may "rely on information, data, statistics or analyses provided by other persons who perform purely ministerial functions for such plan," such as those hired to perform "[c]alculation of benefits," as Watson Wyatt did in this case. 29 C.F.R. § 2509.75-8 (questions D-2 & FR-11).

There is no evidence in the record before me to suggest that anyone acting in a fiduciary capacity authorized, participated in, or knew about the error that was eventually discovered in Watson Wyatt's pre-retirement pension benefit calculations for Christensen. Further, there is no allegation that the defendants (that is, the Plan and the Benefits Committee) acted in bad faith or "deliberately misled plaintiff in the dissemination of benefit information to him." Easa, 5 F. Supp. 2d at 529. Finally, the record does not reflect that the defendants failed to "exercise due care in hiring [Watson Wyatt] or in training [them] to respond to inquiries from individuals like the plaintiff." Easa, 5 F. Supp. 2d at 529. Therefore, Christensen's breach of fiduciary duty claim must fail.[6]

### III. CONCLUSION

Summary judgment must be granted in favor of the defendants on Christensen's claim that the defendants failed to give him an accurate statement of accrued benefits because there is no evidence that Christensen sent a request for accrued benefits "in writing" to the Plan Administrator, as required by 29 U.S.C. § 1025(a). Even if Christensen had made his requests in writing, imposition of a statutory penalty is discretionary and not warranted here. Moreover, because Christensen has failed to

---

[6]Since I have concluded that Christensen has failed to establish a breach of fiduciary duty on the defendants' part, I need not address the parties' arguments regarding whether the types of relief Christensen requests in his second cause of action (breach of fiduciary duty claim) are available under ERISA.

establish that the Employee Benefits Committee of the Qwest Pension Plan breached its fiduciary duty under 29 U.S.C. § 1104(a)(1)(A) and (B), summary judgment must also be granted in favor of the defendants on Christensen's fiduciary duty claim.

IT IS ORDERED:

1. The defendants' motion for summary judgment (filing 21) is granted;

2. Judgment shall be entered by separate document.

July 14, 2005.

BY THE COURT:
*s/Richard G. Kopf*
United States District Judge